# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

DEFENDING EDUCATION, *et al.*,

Plaintiffs – Appellants,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

Defendants – Appellees.

COMMITTEE OF FIVE, INC., D/B/A XX-XY ATHLETICS,

Plaintiff – Appellant,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

Defendants – Appellees.

DOXA ENTERPRISES, LTD., D/B/A BORN AGAIN USED BOOKS,

Plaintiff – Appellant,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

Defendants – Appellees.

On Appeal from the United States District Court
for the District of Colorado,
Case Nos. 1:25-cv-01572; 1:25-cv-01668, 1:25-cv-02177 (Rodriguez, J.)

## BRIEF OF AMICUS CURIAE
## SOUTHEASTERN LEGAL FOUNDATION
## IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Kimberly S. Hermann
Jordan R. Miller
  *Counsel of Record*
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131
khermann@southeasternlegal.org
jmiller@southeasternlegal.org

*Counsel for Amicus Curiae*

June 14, 2026

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus Southeastern Legal Foundation (SLF) is a Georgia nonprofit corporation. SLF has no parent companies, subsidiaries, or affiliates. SLF does not issue shares to the public, and no publicly traded corporation owns 10% or more of its stock.

Counsel also certifies that the following listed persons and entities have an interest in the outcome of this case and were not included in the Certificates of Interested Persons in any previously filed brief:

1. Kimberly S. Hermann, counsel to amicus Southeastern Legal Foundation
2. Jordan R. Miller, counsel to amicus Southeastern Legal Foundation
3. Southeastern Legal Foundation

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................ iii

IDENTITY OF AMICUS CURIAE .........................................................1

SUMMARY OF ARGUMENT ...........................................................2

ARGUMENT ......................................................................4

  I. Colorado cannot restrict or compel speech to assure members of the public do not feel "unwelcome" or "undesirable." ........................................4

  II. Colorado's history of enacting, enforcing, and defending CADA and other unconstitutional speech restrictions confirms that Appellants face a credible threat of prosecution........................................................9

CONCLUSION ..................................................................17

CERTIFICATE OF COMPLIANCE ...................................................18

CERTIFICATE OF SERVICE ........................................................19

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021) ............................ 11, 14

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ........................................... passim

*Alabama v. U.S. Sec. of Educ.*, No. 24-12444,
   2024 U.S. App. LX 21358 (11th Cir. Aug. 22, 2024) (unpublished).....................8

*Ariz Right to Life PAC v. Bayless*, 320 F.3d 1002 (9th Cir. 2003) ..........................10

*Arkansas v. U.S. Dep't of Educ.*, 742 F. Supp. 3d 919 (E.D. Mo. 2024) .................8

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)......................................................17

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ....................................................15

*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, Civ. Action No. 4:24-cv-00461-O,
   2025 U.S. Dist. LX 124115 (N.D. Tex. Feb. 19, 2025) ......................................8

*Cerame v. Slack*, 123 F.4th 72 (2d. Cir. 2024) .......................................................10

*Chiles v. Salazar*, 146 S. Ct. 1010 (2026)....................................................... 3, 15, 16

*HM Florida-Orl, LLC v. Gov. of Fla.*, 137 F.4th 1207 (11th Cir. 2025) ................11

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*,
   515 U.S. 557 (1995)......................................................................... 14, 15

*Kansas v. U.S. Dep't of Educ.*, 739 F. Supp. 3d 902 (D. Kan. 2024).......................8

*Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377 (W.D. La. 2024) .................8

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003).........................................................10

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
   584 U.S. 617 (2018).................................................................... 3, 12, 13

*Matal v. Tam*, 582 U.S. 218 (2017) ...........................................................................4

*McCauley v. Univ. of the V.I.*, 618 F.3d 232 (3d Cir. 2010)....................................10

*Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) ................................................7

*N.C. Right to Life, Inc. v. Barlett*, 168 F.3d 705 (4th Cir. 1999)............................10

*N.H. Right to Life PAC v. Gardner*, 99 F.3d 8 (1st Cir. 1996)................................10

*Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022)......................................................9

*People v. Janousek*, 871 P.2d 1189 (Colo. 1994).....................................................5

*R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999).........................10

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995).................16

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001)............................4

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................14

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) ......................8, 12

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020)............................. 10, 12

**Cases (cont.)**

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ....................................8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................... 10, 12, 17

*Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025) ..................................8

*Texas v. United States*, 740 F. Supp. 3d 537 (N.D. Tex. 2024)................................8

*Virginia v. Am. Bookselllers Ass'n, Inc.*, 484 U.S. 383 (1988) ...........................9, 10

*Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987) ..................................................9

**Statutes**

Colo. Rev. Stat. § 24-34-301 ...............................................................................4, 5

Colo. Rev. Stat. § 24-34-306 ...............................................................................12

Colo. Rev. Stat. § 24-34-600.3 .............................................................................5

Colo. Rev. Stat. § 24-34-601(2)(a) ............................................................... 2, 5, 14

Colo. Rev. Stat. § 24-34-701(1)(c) .......................................................................2, 5

Colo. Rev. Stat. §§ 24-34-305(1)(d) ......................................................................12

**Other Authorities**

Cambridge Online Dictionary,
  https://dictionary.cambridge.org/dictionary/english/undesirable ...........................6

Undesirable, Merriam-Webster Online Dictionary, https://www.merriam-
  webster.com/dictionary/undesirable .....................................................................6

Unwelcome, Cambridge Online Dictionary,
  https://dictionary.cambridge.org/dictionary/english/unwelcome ...........................6

Unwelcome, Merriam-Webster Online Dictionary, https://www.merriam-
  webster.com/dictionary/unwelcome ......................................................................6

**Rules**

Fed. R. App. P. 29(a)(3)........................................................................................1

Fed. R. App. P. 29(a)(4)(E)...................................................................................1

## IDENTITY OF AMICUS CURIAE[1]

Southeastern Legal Foundation, founded in 1976, is a national, nonprofit legal organization dedicated to defending liberty and rebuilding the American Republic. SLF has an abiding interest in the protection of our civil liberties and, in particular, the ability of individuals to operate their businesses free from state-imposed speech codes.

SLF is interested in this case because it involves a government restricting and compelling speech by individuals and businesses. Further, like other speech codes challenged by SLF's clients, this case involves a statute prohibiting speech that makes a listener feel "unwelcome." And it chills the speech of individuals with the threat of prosecution.

---

[1] No counsel for a party has authored this brief in whole or in part, and no person other than SLF, its members, and its counsel has made a monetary contribution to the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). SLF requested consent from Appellees to file this amicus curiae; having received no response as of the date of filing, SLF attaches this proposed amicus brief to its motion for leave to file. *See* Fed. R. App. P. 29(a)(3).

## SUMMARY OF ARGUMENT

SLF writes to advance two propositions in support of Appellants: (1) the Unwelcome Clause, Colo. Rev. Stat. § 24-34-601(2)(a), and the Unwelcome Advertisement Clause, Colo. Rev. Stat. § 24-34-701(1)(c), violate the First Amendment by prohibiting speech that merely causes a listener to feel "unwelcome," Colo. Rev. Stat. §§ 24-34-601(2)(a), 24-34-701(1)(c); and (2) Colorado's history of enacting and enforcing the Colorado Anti-Discrimination Act (CADA) and similar laws to silence opposing viewpoints, especially in the context of LGBTQ+ controversies, solidifies Appellants' credible fear of prosecution.

First, the Unwelcome Clause and Unwelcome Advertisement Clause are hostile to core First Amendment values. The clauses prohibit the publication, display, or posting of a communication—i.e., speech—that makes an individual feel "unwelcome" at a business based on the individual's sexual orientation, gender identity, or gender expression. Colo. Rev. Stat. §§ 24-34-601(2)(a), 24-34-701(1)(c). But banning speech that makes a listener feel merely "unwelcome" or "unwanted" in a space sets far too low of a threshold to survive First Amendment scrutiny. Many governmental bodies have attempted to regulate speech by defining harassment or bullying to include speech that makes one feel "unwelcome" or involves

"unwelcome" speech. Courts have uniformly enjoined these laws and policies under the First Amendment.

Second, Appellants face a credible threat of prosecution because of Colorado's extensive history of unlawful enforcement in similar contexts. Common sense instructs that a government's past vociferous defense of and indiscriminate and biased enforcement of laws forecasts its future overzealous enforcement of similar laws on the same topic. Colorado has a dubious history of trampling First Amendment rights in its pursuit to shield members of the LGBTQ+ community from dissent regarding their lifestyle choices. Many states go more than a decade between defending any law before the Supreme Court against a First Amendment challenge. But when it comes to laws similar to the one challenged here, Colorado comes before this Court as a three-time Supreme Court loser in just the last eight years, in three separate attempts to suppress or coerce speech in violation of the First Amendment. *See Chiles v. Salazar*, 146 S. Ct. 1010 (2026); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (*303 Creative*); *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617 (2018) (*Masterpiece Cakeshop*). Colorado does not respect, and indeed tramples on, the free-speech rights of those who disagree with its preferred message on LGBTQ+ matters.

In the face of these losses, Colorado yet again amended CADA to both restrict speech that contradicts its preferred ideology and compel speech that aligns with its

preferred ideology. *See* Colo. Rev. Stat. § 24-34-301. Colorado's immediate return to court in defense of another speech code shows that it will not heed the Supreme Court. Instead, Colorado persists with its headstrong efforts to force orthodoxy onto its citizens. Against this backdrop, a reasonable person in Appellants' position would credibly fear prosecution if they spoke viewpoints counter to Colorado's agenda.

## ARGUMENT

### I. Colorado cannot restrict or compel speech to assure members of the public do not feel "unwelcome" or "undesirable."

The Unwelcome Clause and the Unwelcome Advertisement Clause of CADA directly target pure speech just because that speech makes members of the public feel "unwelcome" or "undesirable." But states cannot target speech based only on its emotive impact on a listener. *See Matal v. Tam*, 582 U.S. 218, 243 (2017) ("Giving offense is a viewpoint."); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 217 (3d Cir. 2001) (Alito, J., authoring) (holding that government cannot restrict speech where "the speech is merely offensive to some listener"). And federal courts have rejected other governments' attempts to limit speech using vague terminology that delivers a heckler's veto to offended members of the public.

CADA targets pure speech. The Unwelcome Clause makes it "a discriminatory practice and unlawful" for a person "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement" indicating that "an individual's patronage

4

or presence at a place of public accommodation is *unwelcome*, objectionable, unacceptable, or *undesirable* because of . . . sexual orientation, gender identity, [or] gender expression." Colo. Rev. Stat. § 24-34-601(2)(a) (emphases added). The Unwelcome Advertisement Clause states that a covered person or entity "shall not . . . publish, issue, circulate, send, distribute, give away, or display" any speech in the form of a "communication, paper, poster, . . . book, pamphlet, writing, print, letter, notice, or advertisement" that "[s]tates that the patronage, custom, presence, [or] frequenting . . . by any person . . . belonging to or purporting to be of any particular . . . sexual orientation, gender identity, [or] gender expression . . . is unwelcome or objectionable or not acceptable, desired, or solicited." Colo. Rev. Stat. § 24-34-701(1)(c).

Not only do these clauses target speech, but CADA also fails to define "unwelcome" or "undesirable." *See* Colo. Rev. Stat. § 24-34-600.3; *see also* Colo. Rev. Stat. § 24-34-301. Because CADA does not define these "terms of common usage," a Colorado court would "refer to the dictionary definition" for the terms and give them their "plain and ordinary meaning." *People v. Janousek*, 871 P.2d 1189, 1196 (Colo. 1994).

Common dictionary definitions of "unwelcome" and "undesirable" show how low a threshold CADA has set for prosecuting business owners for their speech or the speech of their employees. "Unwelcome" just means "not wanted." Unwelcome,

Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unwelcome; Unwelcome, Cambridge Online Dictionary, https://dictionary.cambridge.org/dictionary/english/unwelcome. Dictionaries define "undesirable" as "not wanted, approved of, or popular." Undesirable, Cambridge Online Dictionary, https://dictionary.cambridge.org/dictionary/english/undesirable; *see also* Undesirable, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/undesirable (defining "undesirable" as "not desirable: unwanted").

Business owners and their employees who hold traditional views on human sexuality and gender different from Colorado's are therefore prohibited from speaking their deeply-held beliefs on matters of public concern. And why? Merely because others may feel "unwanted" because of their beliefs. Under CADA's definitions, an all-too-familiar and not-quite-hypothetical situation immediately re-emerges: imagine a baker who specializes in celebratory cakes and posts on his business's Facebook page his belief that marriage is only between a man and a woman. Or perhaps the baker might post his belief that sex is fixed at birth and dictates a person's gender. Certainly, a gay couple seeking a wedding cake or an individual who identifies as transgender seeking a "coming-out" cake would feel "unwelcome" or "unwanted" in the baker's business. Under CADA, Colorado could prosecute the baker for that speech. And history has repeatedly shown that it would.

As another example, consider a business owner who makes it his business's policy not to use the chosen name or "preferred" pronouns of transgender-identifying individuals in speech about such third persons, or in making personalized items for such persons—for instance a baker who will not put the chosen name of a transgender-identifying individual on a cake. And imagine a medical professional holding the same policy when making notations in a medical chart about such persons. Or an attorney or business owner applying the same policy to invoices provided to such persons for services rendered. A transgender-identifying individual very well could feel unwelcome because of these announced policies. But each of these uses of biological pronouns or names is protected speech.[2] *See, e.g.*, *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021). Yet the Unwelcome Clause and Unwelcome Advertisement Clause punish these business owners for their protected speech, reaching even the baker for saying he will not decorate a cake in a manner that the Supreme Court has held Colorado cannot force him to decorate. *See 303 Creative, LLC*, 600 U.S. at 578–79 (summarizing holding as Colorado cannot "use[] [CADA] to compel an individual to create speech she does not believe").

---

[2] The proper response to this protected speech, and any offense taken by some thereof, is not government censorship or the coercive force of the state. It is more speech. Just as the Constitution affords the business owner and his employees the right to speak their consciences on these issues, so too does it afford the offended individual the right to criticize the business owner's beliefs, to refuse to patronize the business, and to speak their mind to others about being made to feel unwelcome.

Colorado, though, is not the only governmental entity to attempt, albeit unconstitutionally, to regulate speech that results in a listener feeling "unwelcome." The Eleventh Circuit, for one, held that the University of Central Florida's discriminatory-harassment policy and bias-related incidents policy that targeted speech creating an "unwelcoming environment" was likely unconstitutional. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1114, 1116 (11th Cir. 2022); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 762–63 (6th Cir. 2019) (holding that a "freedom-of-speech advocacy organization" had standing to challenge University of Michigan policy defining harassment to include "unwelcome verbal . . . conduct"); *Kansas v. U.S. Dep't of Educ.*, 739 F. Supp. 3d 902, 926–28 (D. Kan. 2024) (preliminarily enjoining United States Department of Education Final Rule that defined harassment to include "unwelcome conduct" that arguably reached "misgendering" an individual who identifies as transgender and advocating for positions that sex is immutable and inextricably intertwined with gender).[3]

---

[3] Six other courts have held that the United States Department of Education's definition of harassment in its Final Rule that focused on "unwelcome conduct" and arguably reached the above-listed speech violated, or likely violated, the First Amendment. *See Alabama v. U.S. Sec. of Educ.*, No. 24-12444, 2024 U.S. App. LX 21358, at *13–17 (11th Cir. Aug. 22, 2024) (unpublished); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, Civ. Action No. 4:24-cv-00461-O, 2025 U.S. Dist. LX 124115, at *10–11 (N.D. Tex. Feb. 19, 2025) (vacating Final Rule); *Tennessee v. Cardona*, 762 F. Supp. 3d 615, 624–26 (E.D. Ky. 2025) (same); *Arkansas v. U.S. Dep't of Educ.*, 742 F. Supp. 3d 919, 945 (E.D. Mo. 2024); *Texas v. United States*, 740 F. Supp. 3d 537, 550–51 (N.D. Tex. 2024); *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 400–01 (W.D. La. 2024).

Colorado, by defining "discriminatory practice and unlawful" to include speech making a listener feel "unwelcome" or "undesirable," adopts a threshold that chills and restricts speech protected by the First Amendment, as several courts have held in analyzing similar legal provisions. But, as discussed next, Colorado already knows this. Indeed, its three trips to the Supreme Court have helpfully established First Amendment precedents holding that Colorado may not do exactly what CADA now does.

**II.  Colorado's history of enacting, enforcing, and defending CADA and other unconstitutional speech restrictions confirms that Appellants face a credible threat of prosecution.**

As Appellants explain, both this Court and the United States Supreme Court have established that a credible threat showing "is not supposed to be a difficult bar for plaintiffs to clear in the First Amendment pre-enforcement context." *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) (citing *Wilson v. Stocker*, 819 F.2d 943, 946–47 (10th Cir. 1987); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)). "[T]he Supreme Court has often found a case or controversy between a plaintiff challenging the constitutionality of a statute and an enforcement official who has made no attempt to prosecute the plaintiff under the law at issue." *Wilson*, 819 F.2d at 946–47. Indeed, within the context of a First Amendment pre-enforcement challenge, courts often "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d

9

319, 335 (5th Cir. 2020) (quoting *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) and citing *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 237–39 (3d Cir. 2010); *Ariz Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006–07 (9th Cir. 2003); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003); *N.C. Right to Life, Inc. v. Barlett*, 168 F.3d 705, 710 (4th Cir. 1999)).

A challenged law poses a credible threat of prosecution where it creates an objectively reasonable fear of prosecution, or an "actual and well-founded fear that the law will be enforced against" a plaintiff. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (quoting *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393) (internal quotation marks omitted). "Determining objective reasonableness [of a fear of prosecution] demands a frank consideration of the totality of the circumstances, including the nature of the conduct that a particular statute proscribes." *R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999).[4] One key circumstance this Court considers is whether the defending government entity has enforced similar

---

[4] Appellant Defending Education rightly cites *Cerame v. Slack*, 123 F.4th 72, 85 (2d. Cir. 2024), to explain the presumption that new government policies pose a credible threat, even if never enforced. Opening Br. for Appellants at 40–41, *Defending Educ. v. Sullivan*, No. 26-1101 (10th Cir. June 8, 2026). *Cerame* also identifies four key factors in a totality-of-the-circumstances test that bear on whether a government policy credibly threatens a plaintiff with prosecution: "the presumption that the government intends to enforce its laws, the recency of the applicable regulation, the general extent of enforcement against similar conduct, and whether there has been any specific disavowal of enforcement against a plaintiff or his conduct." *Cerame*, 123 F.4th at 85.

statutes against similar speech. *See, e.g.*, *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021), *rev'd on other grounds*, *303 Creative*, 600 U.S. 570. In determining whether and how a state will enforce a challenged statute, a court should consider how the state has enforced other statutes regulating similar conduct. *See HM Florida-Orl, LLC v. Gov. of Fla.*, 137 F.4th 1207, 1218–19 (11th Cir. 2025), *vacated for reh'g en banc*, 160 F.4th 1282 (11th Cir. 2025) (identifying as evidence of credible threat the state's enforcement of a law "before the Act" that targeted conduct similar to that targeted by the new Act).

The Court got this standing principle right even when it was reversed on the merits in a recent constitutional challenge to a similar provision of CADA. *303 Creative*, 6 F.4th at 1174. In *303 Creative*, this Court observed that "Colorado['s] . . . history of past enforcement against nearly identical conduct—i.e., *Masterpiece Cakeshop*" created "a credible fear that Colorado will enforce CADA against [303 Creative]." *Id.* at 1174–75.

The same is true here—the Unwelcome Clause, the Unwelcome Advertisement Clause, in combination with the newest amendments to CADA, add yet additional applications of CADA to censor protected speech and compel speech. Colorado cannot seem to help itself. This case is far from the first challenge to laws at the intersection of core First Amendment rights and Colorado's shielding of individuals identifying as LGBTQ+ from speech that may offend them. In the last

11

decade, many states have not appeared at oral argument before the Supreme Court in defense of the constitutionality of even one of their state statutes against a First Amendment challenge. By contrast, in just the last eight years, Colorado has appeared three times in defense of LGBTQ+ oriented statutes, including twice as a respondent after the Supreme Court granted a writ of certiorari from a decision of this Court. It is against this backdrop that Appellants bring their pre-enforcement challenge. Their credible fear of prosecution is well-founded.

First, in *Masterpiece Cakeshop*, Colorado, relying on CADA, attempted to compel a baker to bake a cake for a gay wedding over his sincerely-held beliefs that marriage is only between one man and one woman. 584 U.S. at 628–29. Colorado did so through its Colorado Civil Rights Division and Colorado Civil Rights Commission. *Id.* These two bodies are the very same bodies that would receive and initially adjudicate a complaint of discrimination alleging a violation of CADA.[5] *See* Colo. Rev. Stat. §§ 24-34-305(1)(d), 24-34-306. In trampling the First Amendment

---

[5] That any member of the public may file a charge of discrimination against a business heightens the credible threat of enforcement. *See Susan B. Anthony List*, 573 U.S. at 164 ("The credibility of that threat is bolstered by the fact that authority to file a complaint with the Commission is not limited to a prosecutor or an agency. Instead, the false statement statute allows any person with knowledge of the purported violation to file a complaint." (internal quotation marks omitted)). And even if the Colorado Civil Rights Division does not prosecute a charge of discrimination, the threat to a business, and its owner, of being the target of an investigation has a chilling effect on speech. *See Cartwright*, 32 F.4th at 1120 ("[F]ear of the investigative process is sufficient to create an 'objective chill' that gives rise to standing." (citing *Fenves*, 979 F.3d at 330–35)).

rights of the baker, the Commission demonstrated "clear and impermissible hostility toward the sincere religious beliefs that motivated his objection." *Masterpiece Cakeshop*, 584 U.S. at 634. One commissioner went so far as to say that the baker's reliance on religion was "one of the most despicable pieces of rhetoric that people can use" as "[f]reedom of religion and religion has been used to justify all kinds of discrimination throughout history, whether it be slavery, whether it be the holocaust." *Id.* at 635 (quoting transcript of hearing before Colorado Civil Rights Commission). No other commissioner, nor the reviewing Colorado courts, countered, disavowed, or appeared to blink an eye at this statement. *Id.* at 636. With unchallenged on-the-record statements of this nature, it comes as little surprise that Colorado "elevates one view of what is offensive over another," making efforts to ensure that LGBTQ+ individuals are universally welcome while "implying that religious beliefs and persons are less than fully welcome in Colorado's business community." *Id.* at 634, 638. But this is just the first chapter in the three-case saga that causes Plaintiffs to credibly fear prosecution under CADA.

CADA soon reappeared before the Supreme Court—just five years later in *303 Creative*. Whereas *Masterpiece Cakeshop* called out the bias and animus with which Colorado enforces CADA against views it dislikes, *303 Creative* demonstrated Colorado's disregard for First Amendment principles when enacting and amending CADA.

As the Supreme Court recognized in the opening to its opinion, Colorado "uses [CADA] to compel an individual to create speech she does not believe." *303 Creative*, 600 U.S. at 578–79. And Colorado does so rather openly and brazenly. In defense of CADA, Colorado's "logic" led to the proposition that it could "compel anyone who speaks for pay on a given topic to accept all commissions on that same topic—no matter the underlying message—if the topic somehow implicates a customer's statutorily protected trait." *Id.* at 589 (citing *303 Creative*, 6 F.4th at 1198 (Tymkovich, C.J., dissenting)).

Colorado's argument was dead wrong. "A commitment to speech for only *some* messages and *some* persons is no commitment at all." *Id.* at 602. Rather, "the First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided' and likely to cause 'anguish' or 'incalculable grief.'"[6] *Id.* at 586 (first quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 574 (1995), then quoting *Snyder v. Phelps*, 562 U.S. 443, 456 (2011)). This is just as true in the context of public accommodation laws. But Colorado, in enacting and amending CADA, ignored a long line of Supreme Court cases upholding First

---

[6] To state the obvious: given that the First Amendment protects speech causing "anguish" and "incalculable grief," it surely protects speech that merely makes one feel "unwelcome" or "undesirable," Colo. Rev. Stat. § 24-34-601(2)(a). To make the comparison even more direct, both *Hurley* and *Snyder* concerned speech related to LGBTQ+ issues.

Amendment rights over state public accommodation laws. *See id.* at 585–86 (citing *Hurley*, 515 U.S. 557; *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)); *see also id.* at 592 ("[T]his Court has also recognized that no public accommodations law is immune from the demands of the Constitution. In particular, this Court has held, public accommodations statutes can sweep too broadly when deployed to compel speech.").

In the face of and apparently undeterred by *303 Creative* and the extensive body of First Amendment precedent on which it relies, Colorado chose to forbid yet another wide swath of protected speech. Colorado's ratcheting up of CADA in the face of numerous Supreme Court defeats shows an intent to continue to enforce its laws beyond what the Constitution permits.

But there's more. Two Supreme Court losses were not enough for Colorado; Colorado completed its trifecta of losses in *Chiles*. There, Colorado attempted to ban therapists from engaging in talk therapy with patients aiming to align their gender identity with their biological sex.[7] *Chiles*, 146 S. Ct. at 1018–19. In holding the Colorado law unconstitutional, the Supreme Court recognized Colorado's history of

---

[7] Just like the laws and enforcement action challenged in *Masterpiece Cakeshop* and *303 Creative*, the provision challenged in *Chiles* openly and blatantly prohibited one viewpoint in the ongoing debate regarding gender identity—that one should conform their gender identity to their biological sex—while placing no limitations on a therapist encouraging a person to explore a gender identity that differed from the person's biological sex. *See* 146 S. Ct. at 1018.

failed arguments in defense of similar laws, including its contention that its laws only regulate conduct and do not reach Appellants' desired speech. *Id.* at 1025. Ultimately, *Chiles* highlights two sound First Amendment principles. First, "[w]hen the government seeks not just to restrict speech based on its subject matter, but also to dictate what particular 'opinion or perspective' individuals may express on that subject, 'the violation of the First Amendment is all the more blatant.'" *Id.* at 1021 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995)). Second,

> the First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country. It reflects instead a judgment that every American possesses an inalienable right to think and speak freely, and a faith in the free marketplace of ideas as the best means for discovering truth. However well-intentioned, any law that suppresses speech based on viewpoint represents an 'egregious' assault on both of those commitments.

*Id.* at 1029 (quoting *Rosenberger*, 515 U.S. at 829).

In the face of a First Amendment Supreme Court record wholly unblemished by any success, Colorado has doubled down on its paternalistic desire to shield the LGBTQ+ community from speech that might cause its most thin-skinned member some minor offense at the continued expense of the First Amendment rights of Coloradans who disagree with it. Colorado officials in charge of neutrally administering CADA have repeatedly done so in a biased manner, even invoking references to slavery and the holocaust to negatively portray those who hold a

viewpoint contrary to Colorado's on LGBTQ+ issues. This history is substantial evidence that Appellants credibly fear that they will be prosecuted and persecuted for their speech, which is "arguably proscribed" by CADA. *See Susan B. Anthony List*, 573 U.S. at 162 (ellipsis omitted) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

On standing, this Court should find the existence of a credible threat of prosecution just as it did for the *303 Creative* plaintiffs, even if it got the merits of that case wrong. And the citizens of Colorado can hope this Court heeds the Supreme Court's teachings on the merits more closely than has Colorado.

## <u>CONCLUSION</u>

This Court should reverse the district court's order and direct the district court to enter a preliminary injunction enjoining enforcement of the Unwelcome Clause and Unwelcome Advertisement Clause.

Respectfully submitted,

Kimberly S. Hermann
Jordan R. Miller
   *Counsel of Record*
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131
khermann@southeasternlegal.org
jmiller@southeasternlegal.org

June 14, 2026                           *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4138 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word Version 2605 and uses a proportionally spaced typeface, Times New Roman, in 14-point type.

/s/ *Jordan R. Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was electronically filed on June 14, 2026, with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the CM/ECF system.

/s/ *Jordan R. Miller*